TOLLIVER *v.* STATE.

Opinion delivered June 29, 1931.

*Seth C. Reynolds* and *J. O. Livesay*, for appellant.

*Hal L. Norwood*, Attorney General and *Robert F. Smith*, Assistant, for appellee.

SMITH, J. Appellant was convicted of murder in the first degree, and given a life sentence in the penitentiary, under an indictment charging him with having shot and killed one Almer Crossly. He admitted firing the shot which caused Crossly's death, but interposed the defense

that the killing was accidental. The testimony may be briefly summarized as follows: The killing occurred in a room which appellant occupied. A number of other colored men were in his room shooting dice. Appellant was not engaged in the game, but was fixing an inner tube near the stove in the room, which was several feet from the bed where the dice game was in progress. Crossly and some other colored men entered the room and walked over to the bed. At about that time appellant quit work on the inner tube, walked over to the bed and took a pistol from under the pillow. A clicking sound was heard as if a pistol had been cocked, and a shot was fired immediately thereafter. The pistol was one which could not be fired until it had first been cocked. It could not be fired by merely pulling the trigger, as could a double-action or self-cocking pistol. This shot killed Crossly almost instantly after grazing the arm of another man as he reached across the bed for his winnings. No quarrel of any kind had occurred in the room, and appellant made no remark indicating any intention to shoot.

Three witnesses were permitted to testify, over the objection of appellant, concerning threats made by the latter on the night before the killing. These witnesses testified that appellant said some one had insulted him at his house the night before, and that he said, "I would have killed a man that night if I had had my gun; and that ain't all." Appellant did not say who the man was, and the witnesses did not know to whom he referred, but one of the parties present asked where the man lived, and appellant "motioned towards the compress." Deceased was present at appellant's house the night before the killing and worked with appellant at the compress.

Testimony was offered by appellant to the effect that he and deceased were friends of long-standing; that they had never had a quarrel, and that there was no bad feeling between them. Appellant also denied having made any threats against deceased, or any other person, and

denied having had the conversation attributed to him by the witnesses who testified concerning the threats. Appellant testified that he happened to remember that he had a half dollar under the pillow lying on the bed where the men were shooting dice, and he thought his money would be safer in his own pocket, and he went to the bed to get the money. In regard to the pistol he testified as follows: "They was playing on the bed. I got up to get my money and got my pistol out and was standing with it in my hand and Son Smith knocked my hand and the gun went off. Son was standing at the head of the bed, and I had to walk around to the wall between him and the wall." After describing the position of various participants in the game he proceeded to say: "When I pulled the gun up, and reached and got the gun, I said I believe that boy will bar the five. Smith said Gulley ain't got nothing, and he knocked my gun, and the gun went off." Smith testified that he hit appellant's arm, and the gun went off, and other persons in the room corroborated the testimony of both appellant and Smith.

Upon the issues thus joined, the court gave the usual instructions in homicide cases, but exceptions were saved to all the instructions which submitted the question whether appellant was guilty of a higher degree of homicide than that of involuntary manslaughter, for the reason that the undisputed testimony shows that he was not guilty of any higher degree of homicide than that of involuntary manslaughter. It is also insisted, for the reversal of the judgment of the court below, that error was committed in the admission of the testimony concerning the threats alleged to have been made by appellant, for the reason that the testimony did not identify the deceased as the person against whom the threats were made.

We are of the opinion that no error was committed in the admission of this testimony, nor in charging the jury upon the higher degrees of homicide.

The defense interposed was that the killing was accidental, and that appellant had no intention of killing

any one; but the threats had been but recently made, and were of a character to indicate that appellant was harboring a murderous intent towards some one, and it cannot be said that the testimony did not warrant the inference that deceased was the person referred to. Deceased had been at appellant's home the night before, this being the time and place when and where appellant was insulted. Appellant did not call deceased's name when asked the name of the person to whom he referred, but he did point in the direction of deceased's home and place of employment; but far more significant than this circumstance is the fact that appellant ceased the work upon which he was engaged when deceased came into his room, got his pistol, which could not be fired until it had been cocked, and shot the deceased with such accuracy of aim that a single shot killed him instantly. The truth of appellant's statement, and that of Smith, that Smith had struck appellant's arm, and had thereby caused the pistol to fire, was, of course, a question of fact for the jury, as was also the reasonableness of appellant's statement concerning the removal of the pistol from under the pillow. In fact, he made no reasonable explanation of the removal of the pistol, except to say that he had no intention of firing it.

At page 732 of Underhill's Criminal Evidence (3d ed.) it is said: "Under certain circumstances the vague and uncertain threats of the accused may be shown to prove the condition of his mind at the time of the crime. The rule is applied to his declarations that he is going to kill somebody, without mentioning any names, or that he is going to make trouble, or that he is going to shoot some one, or similar indefinite threats which indicates that he is in an ugly frame of mind and disposed to commit some crime, though not the particular crime for which he is on trial." The numerous cases cited in the note to the text quoted fully sustain the law as stated, among these being an Arkansas case, which does not appear as having been published in our official reports.

The testimony covering the threats was therefore competent upon the question of the condition of appellant's mind at the time of the killing, and if it was found by the jury, as it might have been, that deceased was the unnamed person to whom appellant referred, the testimony was competent and sufficient to show the malice and premeditation essential to constitute the crime of murder in the first degree, of which crime appellant was convicted.

Appellant requested an instruction numbered 3, reading as follows: "3. If you believe from the evidence in this case that the defendant, by accident or misadventure and not intentionally, shot and killed Crossly, against whom he had no evil design, he would not be guilty of unlawful homicide, and you will acquit him." The court modified this instruction by adding thereto the following clause: "unless he killed the deceased in a careless and reckless manner," and an exception was saved to this modification.

No error was committed in this respect. It is provided by statute (§ 2356, Crawford & Moses' Digest) that "if the killing be in the commission of an unlawful act, without malice, and without the means calculated to produce death, or in the prosecution of a lawful act, done without due caution and circumspection, it shall be manslaughter." Certainly, in this case the jury might have found that, even though brandishing the pistol was a lawful act, it had been done without due caution and circumspection, and it was therefore not improper to submit this question to the jury, as was done by the modification of instruction numbered 3.

Another instruction numbered 4, also requested by appellant on the same subject, was modified to conform to instruction numbered 3, which was given as modified, and these instructions, as given, fully and correctly declared the law applicable to involuntary manslaughter.

Upon a consideration of the whole case, we find no error in the record; and, as we are also of the opinion that

the testimony is legally sufficient to support the conviction of murder in the first degree, the judgment must be affirmed, and it is so ordered.

KIRBY and BUTLER, JJ., dissent.